[Cite as *Granger v. Auto Owners Ins.*, 2013-Ohio-2792.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STEVE GRANGER, et al.

     Appellants

     v.

AUTO OWNERS INS., et al.

     Appellees

C.A. No.     26473

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     CV 2011 07 3997

DECISION AND JOURNAL ENTRY

Dated: June 28, 2013

BELFANCE, Judge.

{¶1} Plaintiffs-Appellants Steve Granger and Paul Steigerwald appeal the judgment of the Summit County Court of Common Pleas granting summary judgment in favor of Defendants Auto-Owners (Mutual) Insurance Company, Owners Insurance Company (Collectively "Auto-Owners"), The Church Agency, Inc., and Mike Coudriet. For the reasons set forth below, we reverse and remand the matter for proceedings consistent with this opinion.

I.

{¶2} Mr. Granger and Mr. Steigerwald established a trust to hold their assets, including a certain piece of real property in Akron, Ohio that Mr. Granger and Mr. Steigerwald have used as rental property. Both Mr. Granger and Mr. Steigerwald are trustees of the trust. Auto-Owners issued a dwelling insurance policy to Mr. Granger, Mr. Steigerwald, and the trust and an umbrella policy to Mr. Granger alone. The Church Agency and its broker Mr. Coudriet provided assistance in obtaining the policies.

{¶3}   Valerie Kozera, the mother of a then-six-year old child, attempted to rent the premises, but Mr. Granger informed her that he would not rent to anyone with children. Ms. Kozera contacted Fair Housing Contact Service, Inc., ("FHCS") which investigated her claims of pre-leasing housing discrimination. In March 2011, FHCS and Ms. Kozera filed a complaint in federal court against Mr. Granger and Mr. Steigerwald alleging federal and state fair housing claims premised on discrimination based on familial status and race. The Church Agency was notified of the lawsuit, and it in turn notified Auto Owners Insurance. In a letter to Mr. Steigerwald and Mr. Granger dated June 8, 2011, Auto-Owners stated that it had received notification that Mr. Steigerwald and Mr. Granger had been accused of discrimination but that the dwelling policy definition of personal injury did not include discrimination. Thus, the dwelling policy did not cover the claim. In July 2011, Mr. Granger and Mr. Steigerwald settled the federal case for $32,500.

{¶4}   On July 21, 2011, Mr. Granger and Mr. Steigerwald filed the instant lawsuit against Auto-Owners, The Church Agency, and Mr. Coudriet for breach of contract and estoppel arising out of Auto-Owners' refusal to provide coverage and a defense in the federal suit. The complaint is unclear as to the specific claims against The Church Agency and Mr. Coudriet.

{¶5}   Mr. Granger and Mr. Steigerwald filed a motion for partial summary judgment on the issue of Auto-Owners' duty to defend pursuant to the umbrella policy. Auto-Owners filed a motion for summary judgment asserting that it had no duty to provide coverage or defense under the policies for discrimination claims. Additionally, The Church Agency and Mr. Coudriet filed a separate motion for summary judgment. The trial court denied Mr. Granger's and Mr. Steigerwald's motion for partial summary judgment and granted Auto-Owners' and The Church

Agency's and Mr. Coudriet's motions for summary judgment. Mr. Granger and Mr. Steigerwald have appealed, raising one assignment of error for review.

## II.

## ASSIGNMENT OR ERROR

### THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT[.]

{¶6} Mr. Granger and Mr. Steigerwald assert that the trial court erred in granting summary judgment to Auto-Owners, The Church Agency, and Mr. Coudriet. Notably, they do not assert that the trial court erred in denying Mr. Granger's and Mr. Steigerwald's motion for partial summary judgment.

{¶7} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "We apply the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party." *Garner v. Robart*, 9th Dist. No. 25427, 2011–Ohio–1519, ¶ 8.

{¶8} Pursuant to Civ.R. 56(C), summary judgment is appropriate when:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a summary judgment motion, the movant bears the initial burden of demonstrating that there are no genuine issues of material fact concerning an essential element of the opponent's case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "'must

set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 293, quoting Civ.R. 56(E).

{¶9} With respect to Mr. Granger's and Mr. Steigerwald's assertion the trial court erred in granting summary judgment to Auto-Owners, they maintain that the trial court erred only because Mr. Granger was owed a defense under the umbrella policy. Our analysis is thus limited to that issue.

{¶10} "An insurance policy is a contract between the insurer and the insured. If we must interpret a provision in the policy, we look to the policy language and rely on the plain and ordinary meaning of the words used to ascertain the intent of the parties to the contract." (Internal citations omitted.) *Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176, ¶ 18. "Ambiguous provisions in an insurance policy must be construed strictly against the insurer and liberally in favor of the insured. This is particularly true when considering provisions that purport to limit or qualify coverage under the policy." (Internal citation omitted.) *Westfield Ins. Co. v. Hunter,* 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 11. "[A]n exclusion in an insurance policy will be interpreted as applying only to that which is clearly intended to be excluded." (Internal quotations and citation omitted.) *Id.*

> An umbrella policy is a policy which provides excess coverage beyond an insured's primary policies. Umbrella policies are different from standard excess insurance policies, since they provide both excess coverage ("vertical coverage") and primary coverage ("horizontal coverage"). The vertical coverage provides additional coverage above the limits of the insured's underlying primary insurance, whereas the horizontal coverage is said to "drop down" to provide primary coverage for situations where the underlying insurance provides no coverage at all.

(Internal quotations and citations omitted.) *Cincinnati Ins. Co. v. CPS Holdings, Inc.,* 115 Ohio St.3d 306, 2007-Ohio-4917, ¶ 5.

{¶11} "[T]he duty to defend is broader than and distinct from the duty to indemnify." *Ward* at ¶ 19. "The duty to defend arises when a complaint alleges a claim that could be covered by the insurance policy." *CPS Holdings, Inc.* at ¶ 6. The duty "is determined by the scope of the allegations in the complaint." *Ward* at ¶ 19. "If the allegations state a claim that potentially or arguably falls within the liability insurance coverage, then the insurer must defend the insured in the action." *Id.* "Once an insurer must defend one claim within a complaint, it must defend the insured on all the other claims within the complaint, even if they bear no relation to the insurance-policy coverage." *Sharonville v. Am. Emps. Ins. Co.,* 109 Ohio St.3d 186, 2006-Ohio-2180, ¶ 13. "But if all the claims are clearly and indisputably outside the contracted coverage, the insurer need not defend the insured." *Ward* at ¶ 19.

{¶12} Thus, we examine the umbrella policy to determine whether there exists an issue of fact as to whether Auto-Owners breached its contract with Mr. Granger by failing to provide a defense in the federal suit. The umbrella policy names Steve Granger as an insured under the policy. There is nothing in the policy to suggest that Mr. Steigerwald is an insured under the umbrella policy, and Mr. Granger and Mr. Steigerwald do not make an argument to the contrary. The policy states:

> DEFENSE – SETTLEMENT
>
> With respect to any occurrence:
>
> (a) not covered by underlying insurance; but
>
> (b) covered by this policy except for the retained limit;
>
> we will:
>
> (a) defend any suit against the insured at our expense, using lawyers of our choice. * * *
>
> (b) investigate or settle any claim or suit as we think appropriate.

The umbrella policy further states that Auto Owners "will pay on behalf of the insured the ultimate net loss in excess of the retained limit which the insured becomes legally obligated to pay as damages because of personal injury * * * ." Personal injury is defined as:

    (a) bodily injury, sickness, disease, disability or shock;

    (b) mental anguish or mental injury;

    (c) false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation; and

    (d) libel, slander, defamation of character or invasion of rights of privacy; including resulting death, sustained by any person.

{¶13} As is evident from the above language, Auto-Owners defined personal injury both in terms of certain claims, such as malicious prosecution, and in terms of resulting harms, such as humiliation or mental anguish. Auto-Owners asserted in its motion for summary judgment that the claims against Mr. Granger and Mr. Steigerwald for pre-leasing discrimination do not constitute personal injury under the umbrella policy and thus are not covered. Therefore, according to Auto-Owners, it had no duty to defend Mr. Granger. Auto-Owners also asserted that even if pre-leasing discrimination did constitute a personal injury under the umbrella policy, it would be excluded under the provision that indicates the policy does not cover "[p]ersonal injury * * * expected or intended by the insured[]" because Mr. Granger intended to discriminate.

{¶14} Mr. Granger and Mr. Steigerwald asserted in their response that, because Ms. Kozera claimed in her complaint that she suffered emotional distress, she arguably suffered humiliation, which is a personal injury covered under the policy. We agree. Emotional distress has been defined as "[a] highly unpleasant mental reaction (such as anguish, grief, fright, *humiliation*, or fury) that results from another person's conduct[.]" (Emphasis added.) *Black's*

*Law Dictionary* 563 (8th Ed.2004). Thus, it would appear that the federal complaint alleges a personal injury as contemplated by the umbrella policy.

{¶15} Moreover, based upon the limited arguments made below, we cannot at this point determine whether the exclusion applies. The dissent maintains that, because the record is clear that Mr. Granger intended the *discrimination*, the exclusion applies and Auto-Owners had no duty to defend. However, this approach ignores the plain language of the policy. The relevant inquiry under the exclusion portion of the policy is whether the *personal injury* was expected or intended. Thus, the appropriate question to ask is whether Mr. Granger expected or intended Ms. Kozera to be humiliated by his conduct. There has not even been any argument advanced by Auto-Owners on this point, let alone the introduction of relevant evidence. *See Allstate Ins. Co. v. Campbell,* 128 Ohio St.3d 186, 2010-Ohio-6312, ¶ 59 ("An insurer's motion for summary judgment may be properly granted when intent may be inferred as a matter of law. In cases such as this one, where the insured's act does not necessarily result in harm, we cannot infer an intent to cause injury as a matter of law."). Thus, we conclude that Auto-Owners is not entitled to summary judgment on the issue of whether it breached the contract by failing to defend Mr. Granger pursuant to the umbrella policy. This portion of Mr. Granger's and Mr. Steigerwald's assignment of error is sustained.

{¶16} Mr. Granger and Mr. Steigerwald further argue that the trial court erred by granting summary judgment in favor of Auto-Owners with respect to its bad faith claim. Auto-Owners did move for summary judgment on this issue and the trial court, without qualification, granted summary judgment to Auto-Owners. Because the trial court does not discuss the bad faith claim in its judgment entry, its basis for awarding summary judgment on this issue is entirely unclear. We are unsure what role the trial court's determination that Mr. Granger and

Mr. Steigerwald were not entitled to coverage or a defense played in determining that Auto-Owners was entitled to summary judgment on Mr. Granger's and Mr. Steigerwald's bad faith claim. Accordingly, upon remand, the trial court should consider this issue in the first instance in light of our conclusion that Auto-Owners was not entitled to summary judgment on the breach of contract claim with respect to its failure to provide a defense to Mr. Granger under the umbrella policy.

{¶17} Additionally, Mr. Granger and Mr. Steigerwald argue that the trial court erred by granting summary judgment in favor The Church Agency and Mr. Coudriet. Specifically, they argue that a genuine issue of material fact existed regarding whether The Church Agency and Mr. Coudriet breached their duties owed to their clients by failing to timely submit Mr. Granger's insurance claim to Auto-Owners. They do not appear to challenge the trial court's conclusion that The Church Agency and Mr. Coudriet were entitled to summary judgment on Mr. Granger's and Mr. Steigerwald's breach of contract claim. Nor do they challenge the trial court's determination that there was no breach of duty with respect to the submission of the claim under the dwelling policy.

{¶18} In addressing whether The Church Agency and Mr. Coudriet breached any duties with respect to the submission of the claim as to Mr. Granger under the umbrella policy, the trial court based its decision on the fact that it concluded that Auto-Owners did not owe Mr. Granger a defense, and, therefore, essentially The Church Agency and Mr. Coudriet could not be said to have caused Mr. Granger and Mr. Steigerwald any damage. Because we determined that Auto-Owners was not entitled to summary judgment on the issue of whether it breached its contract with Mr. Granger under the umbrella policy by failing to defend him in the federal suit, it is necessary for the trial court to consider the merits of The Church Agency's and Mr. Coudriet's

motion on this point. *Neura v. Goodwill Industries,* 9th Dist. No. 11CA0052-M, 2012-Ohio-2351, ¶ 19. We sustain Mr. Granger's and Mr. Steigerwald's assignment of error.

III.

{¶19} In light of the foregoing, we reverse the judgment of the Summit County Court of Common Pleas and remand the matter for proceedings consistent with this opinion.

Judgment reversed,<br>and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
CONCURS.

CARR, J.
DISSENTING.

**{¶20}** I respectfully dissent. Because I would conclude that Auto Owners demonstrated that Mr. Granger intended to discriminate against Ms. Kozera based on her familial status, while Mr. Granger failed to show that he did not intend any discrimination, I would affirm the trial court's award of summary judgment to the insurance company.

**{¶21}** It is well settled that the interpretation of an insurance policy, like any other contract, is a matter of law. *Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 115 Ohio St.3d 306, 2007-Ohio-4917, ¶ 7. The Ohio Supreme Court directed:

> When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 273 (1999), citing *Employers' Liab. Assur. Corp. v. Roehm*, 99 Ohio St. 343 (1919), syllabus. *See also* Ohio Constitution, Article II, Section 28. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130 (1987), paragraph one of the syllabus. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. *Id.* As a matter of law, a contract in unambiguous if it can be given a definite legal meaning. *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex.2000).

*Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, ¶ 11. "An exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded." (Internal citations and quotations omitted) *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 11. Moreover, "a defense based on an exception or exclusion in an insurance policy is an affirmative one, and the burden is cast on the insurer to establish it." *Continental Ins. Co. v. Louis Marx Co., Inc.*, 64 Ohio St.2d 399, 401 (1980).

**{¶22}** The majority and Mr. Granger are correct that the duty to defend is broader than and distinct from the insurer's duty to provide coverage. *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, ¶ 19. "'The test of the duty of an insurance company, under a policy of liability insurance, to defend an action against an insured, is the scope of the allegations of the complaint in the action against the insured, and where the complaint brings the action within the coverage of the policy the insurer is required to make a defense, regardless of the ultimate outcome of the action or its liability to the insured.'" *Willoughby Hills v. Cincinnati Ins. Co.*, 9 Ohio St.3d 177, 178-179 (1984), quoting *Motorists Mut. v. Trainor*, 33 Ohio St.2d 41 (1973), paragraph two of the syllabus. Therefore, the insurance company has a duty to defend its insured whenever the allegations in the complaint state a claim that "arguably" falls within the coverage. *Harrison* at ¶ 19. However, the insurer has no duty to defend against any claim that is "clearly and indisputably outside the contracted policy language." *CPS Holdings* at ¶ 6, citing *Preferred Risk Ins. Co. v. Gill*, 30 Ohio St.3d 108, 113 (1987); *see also Harrison* at ¶ 19; *Maxum Indemn. Co. v. Selective Ins. Co. of South Carolina*, 9th Dist. No. 11CA0015, 2012-Ohio-2115, ¶ 17 (holding that "once the insurer is able to establish that there is no set of facts that would bring the allegations of the complaint within coverage of its policy, its duty to defend is extinguished.").

**{¶23}** The relevant policy provisions regarding the duty to defend are as follows:

DEFENSE – SETTLEMENT

With respect to any occurrence:

not covered by underlying insurance; but

covered by this policy except for the retained limit;

we will:

defend any suit against the insured at our expense, using lawyers of our choice. * * *

investigate or settle any claim or suit as we think appropriate.

The policy further contains the following relevant exclusion:

EXCLUSIONS

We do not cover:

* *

Personal injury or property damage expected or intended by the insured.

The policy defines "personal injury" to mean:

bodily injury, sickness, disease, disability or shock;

mental anguish or mental injury;

false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation; and

libel, slander, defamation of character or invasion of rights of privacy;

including resulting death, sustained by any person.

{¶24} I disagree with the majority's construction of the complaint underlying Auto Owners' alleged duty to defend. In their complaint filed in federal court, FHCS and Ms. Kozera alleged the following. After Ms. Kozera inquired about an apartment that Mr. Granger had advertised for rent, he asked her who would be living in the apartment with her. After Ms. Kozera told Mr. Granger that her six-year old son would be living with her, Mr. Granger told her that he would not rent the apartment anyone with children. Ms. Kozera contacted FHCS. The agency conducted an investigation, sending trained testers to inquire about renting the premises. Mr. Granger, both verbally and in writing, informed testers who stated that they had children that he would not rent to people with children. Mr. Granger further provided one of the testers with a copy of the lease which emphatically stated that "No * * * children are permitted – period. No

exceptions!" FHCS and Ms. Kozera alleged both a federal and state claim for discrimination. Ms. Kozera further alleged that she suffered damages for "emotional distress" as a result of Mr. Granger's discrimination.

{¶25} Mr. Granger construes Ms. Kozera's claim for damages arising out of emotional distress as one for "humiliation," and therefore "personal injury" as that term is defined in the umbrella policy. While the majority agrees with this construction, I do not. Nowhere in the complaint does any form of the word "humiliation" appear. Moreover, my review of the federal complaint indicates only two causes of action, specifically, one federal and one state claim for discrimination. I would construe the allegation of emotional distress merely as part of the prayer for damages, as it was not developed as a distinct cause of action. Assuming arguendo, however, that Ms. Kozera's claims arguably present a claim for personal injury as that term is defined in the policy, I would conclude that Auto Owners' duty to defend was abrogated by application of the plain language of the policy's exclusion for expected or intended injury.

{¶26} Mr. Granger argues that, because violations of 42 U.S.C. 3604 (Fair Housing Act) and R.C. 4112.02(H) (prohibiting discrimination relating to the rental of housing accommodations) constitute strict liability offenses, his conduct was not intentional. The violation of a law prohibiting discrimination and the act of engaging in conduct intended or expected to cause personal injury are not dependent events. The umbrella policy does not limit its exclusion for intended or expected harm to only situations in which the insured has been convicted or found liable for an offense requiring proof of intent. Moreover, the commission of a strict liability offense does not preclude the ability of the actor to have acted with intent (or any other culpable mental state). The question in this case was whether Mr. Granger intended to

discriminate against Ms. Kozera. I believe that the trial court properly concluded that no genuine issue of material fact existed in that regard.

{¶27} Auto Owners deposed Mr. Granger who testified and admitted that he told Ms. Kozera and others that he would not rent to people with children. He testified that he wished to maintain a quiet environment for his tenants. Mr. Granger further admitted during his deposition that he sent an email to "Lauren Green" about the rental property, informing her that he is "selective" in his choice of tenants and that pets and children are not allowed. "Lauren Green" was one of the testers sent to the property by FHCS to investigate Ms. Kozera's allegation of discrimination. A copy of the lease Mr. Granger provided to prospective tenants, attached to the federal lawsuit which is appended to Mr. Granger's complaint, clearly states that no children are permitted on the premises under the lease. In addition, Mr. Granger admitted in his deposition that he violated the discrimination laws. Based on this evidence, I would conclude that Auto Owners met its initial burden under *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996), to show that Mr. Granger intended to discriminate against Ms. Kozera based on her familial status.

{¶28} I would conclude that Mr. Granger, however, failed to meet his reciprocal burden under *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996), to show that he did not intend to discriminate against Ms. Kozera when he declined to rent to her based on her familial status. In response to the defendants' motions for summary judgment, Mr. Granger submitted his affidavit in which he averred that he did not intend to discriminate against Ms. Kozera or others. I would conclude that his sworn statement made subsequent to his deposition did not serve to create a genuine issue of material fact. This Court has recognized that "'an affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to

defeat a motion for summary judgment.'" *First Energy Solutions v. Gene B. Glick Co.*, 9th Dist. No. 23646, 2007-Ohio-7044, ¶ 12, quoting *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 28. In this case, Mr. Granger offered no explanation for the disparity between his deposition testimony and the subsequent sworn statement in his deposition. Accordingly, he failed to present evidence to contradict Auto Owners' evidence that he intended to discriminate against Ms. Kozera by refusing to rent to her on the basis of her familial status.

{¶29} I would conclude that there was no genuine issue of material fact regarding Mr. Granger's intent to discriminate against Ms. Kozera. The umbrella policy by its plain language excluded from coverage claims based on intentional conduct by the insured. The policy further unambiguously stated that the insurer would only defend the insured against claims "covered by this policy * * *." Because Ms. Kozera's discrimination claims were not arguably covered by the policy, and were in fact clearly and indisputably outside the contracted policy language, Auto Owners owed no duty to defend Mr. Granger. Moreover, because the insurance company owed no duty to defend, its refusal to defend did not constitute bad faith. Accordingly, I would conclude that the trial court did not err by finding that no genuine issue of material fact existed and that Auto Owners was entitled to judgment as a matter of law.

{¶30} Mr. Granger further argues that the trial court erred by granting summary judgment in favor of The Church Agency and Mr. Coudriet. Specifically, he argues that a genuine issue of material fact existed regarding whether The Church Agency and Mr. Coudriet breached their duties owed to their client by failing to timely submit Mr. Granger's insurance claim to Auto Owners. Assuming that Mr. Granger's complaint alleges a cause of action against the insurance agent and the company that helped him procure insurance policies from Auto Owners, my resolution of the issue relating to Auto Owners' motion for summary judgment

would render this argument moot. Because Auto Owners' duty to defend and provide coverage was obviated by an applicable exclusion in the policy, the agency's delay, if any, in forwarding the claim to Auto Owners does not create a genuine issue of material fact as to any claim against The Church Agency and Mr. Coudriet which might be gleaned from the complaint. Accordingly, I would conclude that the trial court did not err in granting summary judgment in favor of The Church Agency and Mr. Coudriet. Accordingly, I would overrule Messrs. Granger's and Steigerwald's assignment of error.

APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellants.

BRIAN T. WINCHESTER and DAWN E. SNYDER, Attorneys at Law, for Appellees.

STEPHAN KREMER and HOLLY MARIE WILSON, Attorneys at Law, for Appellees.