WARD ET AL. *v*. UNITED FOUNDRIES, INC., APPELLANT, ET AL.;

GULF UNDERWRITERS INSURANCE COMPANY, APPELLEE.

[Cite as *Ward v. United Foundries, Inc.*, 129 Ohio St.3d 292, 2011-Ohio-3176.]

*Stop-gap endorsement to commercial liability insurance policy — Substantial-certainty intentional tort — Language in a commercial liability insurance policy stating that insurance does not apply to bodily injury resulting from an act that is "determined" to have been committed by an insured with the belief that an injury is substantially certain to occur does not require a final determination by a fact-finder before the insurer can refuse to defend a claim alleging a substantial-certainty employer intentional tort.*

(Nos. 2010-1049 and 2010-1275 — Submitted April 5, 2011 — Decided July 6, 2011.)

APPEAL from and CERTIFIED by the Court of Appeals for Stark County, 09CA-019, 2010-Ohio-6694.

———————————

**LUNDBERG STRATTON, J.**

{¶ 1} This dispute involves the interpretation of a stop-gap endorsement to a commercial liability insurance policy that appellee, Gulf Underwriters Insurance Company ("Gulf"), issued to appellant, United Foundries, Inc. ("United"). United seeks coverage under the policy for its defense in a substantial-certainty intentional tort[1] lawsuit filed by a United employee. Gulf has denied that it has a duty to defend United because the intentional-tort claims

---

1. A substantial-certainty intentional tort occurs "when [an] employer does not directly intend to injure [an] employee, but acts with the belief that injury is substantially certain to occur." *Penn Traffic Co. v. AIU Ins. Co.*, 99 Ohio St.3d 227, 2003-Ohio-3373, 790 N.E.2d 1199, ¶ 6.

in the underlying complaint are outside the coverage of the policy. The trial court held in favor of United, and the court of appeals reversed.

{¶ 2} For the reasons that follow, we affirm the judgment of the court of appeals.

## Gulf Policy

{¶ 3} Gulf issued a commercial general liability policy ("CGL policy") to United with an endorsement for employer's liability coverage, known as a stop-gap endorsement. Under Section I of the CGL policy, Gulf agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies" and "to defend the insured against any 'suit' seeking those damages." However, under that same section of the policy, Gulf had "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply."

{¶ 4} The CGL policy excluded coverage for injuries "expected or intended from the standpoint of the insured," bodily injury to an employee arising in the course of employment, and injury to the family of an employee as a consequence of the employee's injury, as well as for contribution claims and claims alleging liability under the dual-capacity doctrine.

## Stop-Gap Endorsement

{¶ 5} The stop-gap endorsement modified the CGL policy by deleting the exclusions in Section I of the CGL policy "with respect to 'bodily injury' included within the 'employer's liability hazard' " and replacing them with the exclusions listed in the stop-gap endorsement.

{¶ 6} The following exclusion in the stop-gap endorsement is the subject of this dispute:

{¶ 7} "This insurance does not apply to:

{¶ 8} "* * *

2

**{¶ 9}** "e. 'Bodily injury' intentionally caused or aggravated by you, or 'bodily injury' resulting from an act which is determined to have been committed by you with the belief that an injury is substantially certain to occur."

### Procedural History

**{¶ 10}** David Ward ("Ward") and his wife filed a complaint against Ward's employer, United, alleging claims for employer intentional tort and seeking compensatory and punitive damages and damages for loss of consortium. While the case was pending, United filed an action against its insurance agency and broker for failure to obtain the coverage that United had requested and against Gulf for a declaration that Gulf had a duty to defend and indemnify United for the claims asserted by Ward. The cases were eventually consolidated. The trial court concluded that if the stop-gap endorsement excluded coverage for substantial-certainty intentional torts, then the Gulf policy was illusory. The court granted summary judgment to United on the issue of Gulf's duty to provide a defense in the underlying case.

**{¶ 11}** The Fifth District Court of Appeals reversed. The appellate court determined that the claims alleged in the underlying complaint were not within the coverage provided in the policy; thus, Gulf had no duty to defend or indemnify United. The court rejected United's argument that it is entitled to a defense because the underlying tort claim had not yet been " 'determined to have been committed.' " *Ward v. United Foundries, Inc.*, Stark App. No. 09CA-019, 2010-Ohio-6694, ¶ 83, quoting United's brief. Instead, the court concluded that because the underlying claim was neither potentially nor arguably covered under the terms of the policy, Gulf had no duty to defend or indemnify United. Id.

**{¶ 12}** The Fifth District certified that its decision was in conflict with the decision of the Third District Court of Appeals in *Cooper Tire & Rubber Co. v. Travelers Cas. & Sur. Co.* (Apr. 23, 2007), Hancock App. No. 5-06-40, 2007-

Ohio-1905. And we determined that a conflict exists. 126 Ohio St.3d 1579, 2010-Ohio-4542, 934 N.E.2d 352.

**{¶ 13}** This cause is now before this court upon our determination that a conflict exists (case No. 2010-1275) and pursuant to the acceptance of a discretionary appeal (case No. 2010-1049), 126 Ohio St.3d 1581, 2010-Ohio-4542, 934 N.E.2d 354.

## Certified Conflict

**{¶ 14}** We ordered the parties to brief the issue that is stated as follows in the court of appeals' entry certifying the conflict:

**{¶ 15}** "Whether an exclusion in a commercial general liability insurance policy and/or stop/gap endorsement form, stating the insurance does not apply to 'bodily injury intentionally caused or aggravated by you, or bodily injury resulting from an act which is determined to have been committed by you with the belief that an injury is substantially certain to occur' requires a final determination made by either a judge or a jury before the defense of a claim for a substantial certainty employer intentional tort can be denied."

**{¶ 16}** The parties agree that the stop-gap endorsement excludes coverage for a substantial-certainty intentional tort and that if United is liable to Ward in the underlying action, Gulf has no duty to indemnify United. We need determine only whether the policy obligates Gulf to defend United in the underlying action.

**{¶ 17}** United contends that the phrase "an act which is determined to have been committed by you with the belief that an injury is substantially certain to occur" in the Gulf policy requires Gulf to defend United against any complaint alleging a substantial-certainty intentional tort until a fact-finding judge or jury has "determined" whether or not United is liable for an intentional tort.

## General Insurance Principles

**{¶ 18}** An insurance policy is a contract between the insurer and the insured. *Pilkington N. Am., Inc. v. Travelers Cas. & Sur. Co.*, 112 Ohio St.3d

482, 2006-Ohio-6551, 861 N.E.2d 121, ¶ 23.  If we must interpret a provision in the policy, we look to the policy language and rely on the plain and ordinary meaning of the words used to ascertain the intent of the parties to the contract. *Penn Traffic Co. v. AIU Ins. Co*., 99 Ohio St.3d 227, 2003-Ohio-3373, 790 N.E.2d 1199, ¶ 9; *Cincinnati Ins. Co. v. CPS Holdings, Inc*., 115 Ohio St.3d 306, 2007-Ohio-4917, 875 N.E.2d 31, ¶ 7.  We examine the contract as a whole, which means that an endorsement is read as though it is within the policy.  *Penn Traffic*, ¶ 30.

{¶ 19} We have held that the duty to defend is broader than and distinct from the duty to indemnify.  *Ohio Govt. Risk Mgt. Plan v. Harrison*, 115 Ohio St.3d 241, 2007-Ohio-4948, 874 N.E.2d 1155, ¶ 19.  The duty to defend is determined by the scope of the allegations in the complaint.  Id.  If the allegations state a claim that potentially or arguably falls within the liability insurance coverage, then the insurer must defend the insured in the action.  Id., ¶ 19.  But if all the claims are clearly and indisputably outside the contracted coverage, the insurer need not defend the insured.  Id.

### Analysis of Exclusion Language

{¶ 20} The plain language of the exclusion at issue precludes coverage for substantial-certainty intentional torts.  The allegations within Ward's complaint fall within this exclusion.  United agrees that if it is liable in the underlying case, Gulf has no duty to indemnify United.  Thus, as the court of appeals below concluded, because all the claims are clearly and indisputably outside the contracted coverage, Gulf is not required to defend United under the terms of the policy.  *Ward*, 2010-Ohio-6694, ¶ 82; *Ohio Govt. Risk Mgt*., ¶ 19.

{¶ 21} Nevertheless, in the conflict case, the Third District Court of Appeals interpreted the identical language in a policy issued by a different company and concluded that the exclusion was ambiguous because it did not specify how or by whom the act or failure to act is to be determined.  *Cooper*

*Tire*, 2007-Ohio-1905, ¶ 6. The Third District acknowledged that the policy specifically excluded liability for substantial-certainty intentional torts, but it reasoned that the language implied that there must be a determination by either a judge or jury for the exclusion to be enforceable. "Since no judicial determination can be made prior to the conclusion of the case, [the insurer] may still have a duty to defend without the subsequent liability." Id. at ¶ 8.

{¶ 22} We do not agree with that reasoning. There is no language in the exclusion that implies that a determination by a fact-finder is required before the exclusion can be enforced. Furthermore, even if the phrase were ambiguous, the ambiguity would have no legal significance. There is no set of facts under which United would be covered under the CGL policy because all potential claims fall with the exclusion. Furthermore, the CGL policy provides that Gulf has "no duty to defend the insured against any 'suit' seeking damages * * * to which this insurance does not apply."

{¶ 23} United argues that since the exclusion language uses the past tense—"an act which is *determined* to have been committed by you with the belief that an injury is substantially certain to occur"—Gulf must provide a defense until it has been determined that the employer committed a tort that would be excluded by the policy language. We do not find this interpretation, which was accepted by the Third District in the conflict case, convincing.

{¶ 24} United contends that it intended to purchase insurance for substantial-certainty intentional torts and that if the stop-gap endorsement does not provide a defense or indemnification for substantial-certainty intentional torts, then the Gulf policy is illusory and unenforceable. Although the stop-gap endorsement may not have added the coverage that United intended, it did add coverage for "employer's liability hazards" that were expressly excluded in the CGL policy: coverage for consequential bodily injury (claims by relatives of an employee for their injuries resulting as a consequence of the employee's injury),

6

claims alleging liability under the dual-capacity doctrine (liability both as employer and in another capacity), and contribution or indemnification claims of third parties resulting from workplace injuries. When there is some benefit to the insured from the face of the endorsement, it is not an illusory contract. *State Auto Ins. Co. v. Golden* (1998), 125 Ohio App.3d 674, 678, 709 N.E.2d 529.

{¶ 25} United contends that this was not the coverage it intended to purchase. But this is an argument for United to assert against the insurance agency and broker who procured the policy, not against the insurer. For purposes of this action, the plain language of the stop-gap endorsement that United purchased is plain, unambiguous, and not misleading, and the policy is not illusory.

### Conclusion

{¶ 26} We answer the certified-conflict question in the negative. An exclusion in a commercial general liability insurance policy or stop-gap endorsement stating that the insurance does not apply to bodily injury intentionally caused or aggravated by an insured, or bodily injury resulting from an act that is determined to have been committed by an insured with the belief that an injury is substantially certain to occur does not require a final determination by either a judge or a jury before the insurer can refuse to defend a claim alleging a substantial-certainty employer intentional tort.

{¶ 27} We agree with the Fifth District Court of Appeals that the claims stated in the underlying complaint are neither potentially nor arguably covered under the terms of the policy, and thus, Gulf has no duty under the policy to defend United. Therefore, we affirm the judgment of the court of appeals.

Judgment affirmed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., concurs in judgment only.

_____

Pelini, Campbell, Williams & Traub, L.L.C., Craig G. Pelini, and Kristen E. Campbell, for appellant.

Zelle, Hofmann, Voelbel & Mason, L.L.P., and Michael R. Cashman; and Roetzel & Andress, L.P.A., and Ronald B. Lee, for appellee.

_____