KATHLEEN ANN KEOUGH, J.:
{¶ 1} Plaintiff-appellant, H.P. Manufacturing Company, Inc. ("HP"), appeals from the trial court's decision granting summary judgment to Westfield Insurance Company ("Westfield") and Insurance Partners Agency, Inc. ("IPA"). For the reasons that follow, we affirm.
I. Background
{¶ 2} This case arises from an underlying lawsuit in which HP was sued by its employee, Xavier Lunsford, for a workplace intentional tort. Lunsford v. The H.P. Mfg. Co. , Cuyahoga C.P. No. CV-14-828457. HP gave notice of the lawsuit to its insurer, Westfield, which provided a defense subject to a reservation of rights.
{¶ 3} In order for an employee to succeed against his employer on an intentional tort claim, the employee must demonstrate that the employer committed the tort "with the intent to injure another, or with the belief that the injury was substantially certain to occur." R.C. 2745.01(A). Under R.C. 2745.01(C) an employee may prove an employer's intent to injure without direct evidence and by the operation of a rebuttable presumption that arises when the employer deliberately removes a safety guard:
(C) Deliberate removal by an employer of an equipment safety guard * * * creates a rebuttable presumption that the removal * * * was committed with intent to injure another if an injury or an occupational disease or condition occurs as a direct result.
R.C. 2745.01(C)"is not a separate tort, it merely provides a legally cognizable example of intent to injure." Irondale Indus. Contrs. v. Virginia Sur. Co. , 754 F.Supp.2d 927, 933 (N.D.Ohio 2010).
{¶ 4} In his case against HP, Lunsford alleged that HP had the requisite intent to *148 injure him by operation of R.C. 2745.01(C) because HP "knowingly and/or deliberately removed * * * one or more equipment safety guards, which * * * caused [his] injuries * * *."
{¶ 5} As set forth in the jury's answers to interrogatories, the jury returned a verdict in favor of Lunsford and against HP, finding that HP had failed to rebut the presumption that HP intended to injure Lunsford when it removed an equipment safety guard:
(A) Did the defendant, H.P. Manufacturing Company, Inc., deliberately remove an equipment safety guard from the router on which the plaintiff, Xavier Lunsford, was working?
Response: Yes.
(B) Did the removal of the equipment safety guard directly cause an injury to the plaintiff, Xavier Lunsford?
Response: Yes.
(C) Did the defendant, H.P. Manufacturing Company, Inc., rebut the presumption of intent to injure the plaintiff, Xavier Lunsford?
Response: No.
{¶ 6} The jury awarded $400,000 in compensatory damages to Lunsford. Westfield subsequently denied coverage to HP to indemnify for the award.
{¶ 7} HP then filed suit against Westfield and IPA. HP asserted claims against Westfield for a declaratory judgment construing the policy and the amount due HP under the policy, and for breach of contract regarding Westfield's failure to indemnify HP for its losses stemming from the Lunsford lawsuit. HP asserted a claim for professional negligence against IPA, which sold the policy to HP, alleging that HP had reasonably expected to be provided coverage "for all potential employer liability except in circumstances in which Ohio's workers' compensation laws apply or evidence which would support the conclusion that HP actually intended to cause injury." (Emphasis sic.) Complaint at ¶ 37.
{¶ 8} All parties filed motions for summary judgment. The trial court denied HP's motion and granted Westfield and IPA's motions, ruling that Westfield had no duty to indemnify HP under the policy for any settlement of the judgment amount in the underlying lawsuit, or for any amount HP paid to the Ohio Bureau of Workers' Compensation on the bureau's subrogation claim. This appeal followed.
II. Westfield's Motion for Summary Judgment
{¶ 9} In its first assignment of error, HP argues that the trial court erred in granting Westfield's motion for summary judgment and denying HP's motion for partial summary judgment on the issue of coverage.
{¶ 10} We review a trial court's decision on summary judgment de novo. Bonacorsi v. Wheeling & Lake Erie Ry. Co. , 95 Ohio St.3d 314, 2002-Ohio-2220, 767 N.E.2d 707, ¶ 24. Summary judgment is appropriate only when the moving party demonstrates that (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. Civ.R. 56(C) ; State ex rel. Grady v. State Emp. Relations Bd. , 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).
{¶ 11} The commercial insurance policy HP obtained from Westfield includes employer liability insurance that applies to "bodily injury aris[ing] out of and in the course of the injured employee's employment by [HP]." Exclusion C.5. of the policy, *149 however, specifically states that "[t]his insurance does not cover * * * bodily injury intentionally caused or aggravated by [HP]."
{¶ 12} With regard to Westfield's duty to defend and indemnify HP, the policy states:
We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance. We have the right to investigate and settle these claims, proceedings and suits.
We have no duty to defend a claim, proceeding or suit that is not covered by this insurance. We have a right to investigate, but we have no duty to settle these claims, proceedings and suits.
However, with respect to Exclusion C.5., we have the right and duty to defend a claim, proceeding or suit at our expense until determination has been made that the bodily injury suffered by an employee was intentionally caused by or aggravated by you. When determination is made that the bodily injury suffered by an employee was intentionally caused by or aggravated by you, our duty to continue the defense of a claim, proceeding or suit at our expense will cease. We have no right or duty to settle or pay any claim or judgment for damages that are the result of such intentional acts.
{¶ 13} Thus, pursuant to the policy, Westfield had separate duties: to defend and to indemnify. When presented with the Lunsford claim, Westfield provided a defense, as required by the policy, with a reservation of rights. Westfield fully performed its obligation to provide HP a defense. The issue presented in this appeal is whether the policy created a duty by Westfield to indemnify for the intentional tort verdict rendered in the underlying lawsuit. The law is clear that Westfield had no such duty.
{¶ 14} In Cincinnati Ins. Co. v. DTJ Ents., Inc. (In re Hoyle ), 143 Ohio St.3d 197, 2015-Ohio-843, 36 N.E.3d 122, the Ohio Supreme Court held that liability for an intentional tort claim under R.C. 2745.01 requires a finding that the employer acted with the intention to injure an employee. Id. at ¶ 34. Thus, "an insurance provision that excludes coverage for acts committed with the deliberate intent to injure an employee precludes coverage for employer intentional torts, which require a finding that the employer intended to injure the employee." Id. at ¶ 1.
{¶ 15} Here, the jury in the underlying case found that HP had failed to rebut the presumption that HP intended to injure Lunsford when it removed the equipment safety guard. Although HP contends that by virtue of the rebuttable presumption there was no direct evidence that it intended to injure Lunsford - and that Westfield therefore had a duty to indemnify - proving intent to injure through operation of the rebuttable presumption is no different than proving intent to injure with direct evidence under R.C. 2945.01(A). Hoyle at ¶ 12.
{¶ 16} Although Lunsford may not have presented direct evidence of HP's intent to harm him, by finding that HP failed to rebut the R.C. 2745.01(C) presumption, the jury clearly found that HP specifically intended to injure Lunsford. Despite HP's argument otherwise, its intent was not "merely presumed." Hoyle at ¶ 24 (if the employer fails to produce evidence to rebut the R.C. 2745.01(C) presumption, the effect of the presumption is that the employee proves that the employer committed the removal with the intent to injure another).
{¶ 17} The policy at issue excluded coverage for "bodily injury intentionally caused or aggravated by you." Thus, the *150 Westfield policy excluded coverage for the verdict rendered on Lunsford's intentional tort claim, and Westfield had no duty to indemnify HP.
{¶ 18} HP argues, however, that we should not rely on Hoyle because although Westfield provided a defense, it never intervened in the action for a declaration of its duty to indemnify, as the insurance company in Hoyle did. We do not find Westfield's failure to intervene dispositive. Westfield provided a defense to HP, as required by the policy. There is no evidence that Westfield did not provide HP a thorough and extensive defense, or that HP ever objected to Westfield's defense of Lunsford's intentional tort claim.
{¶ 19} Nevertheless, HP contends that Westfield breached the contract by defending HP because it had no contractual or legal basis to do so. HP relies on Ward v. United Foundries, Inc. , 129 Ohio St.3d 292, 2011-Ohio-3176, 951 N.E.2d 770, for this argument. In United Foundries , the policy at issue excluded coverage for bodily injury "determined to have been committed by [the insured] with the belief that an injury is substantially certain to occur." The insured argued that the insurer was therefore required to provide a defense until either a judge or jury determined that the employer had committed a tort that would be excluded under the policy. The Ohio Supreme Court disagreed, holding that such a determination was not necessary for the insurer to enforce the exclusion where all potential claims in the suit fell within the exclusion. Id. at ¶ 26. HP argues that under United Foundries , Westfield had no legal obligation to defend the claim until a jury determination regarding intent was made and, therefore, it breached the policy by doing so.
{¶ 20} United Foundries is not applicable to Westfield's defense in this case, however. The policy at issue here gave Westfield "the right and duty" to defend a claim until a determination was made that the employee's bodily injury was intentionally caused or aggravated by HP. This provision is not, as HP contends, "against Ohio law under United Foundries ." The United Foundries decision did not hold that an insurance company may not defend until a determination regarding an intentional tort has been made; it merely held that where a policy excludes coverage for bodily injury intentionally caused by an insured, a final determination by a judge or jury is not required before the insurer can refuse to defend a claim alleging an employer intentional tort. Id. at ¶ 26. In this case, Westfield fulfilled its contractual duty to defend HP until the jury determined that HP had committed an intentional tort. Indeed, HP's argument that Westfield had no such duty is inconsistent with the allegation in its complaint that Westfield had a duty to defend under the policy. Complaint at ¶ 18 ("Pursuant to its duty to defend under the Policy, Westfield retained legal counsel and defended the intentional tort claim set forth in the complaint submitted by Lunsford.").
{¶ 21} HP also contends that Westfield's defense wrongfully prevented it from settling the case, even though Westfield knew the claim was not covered under the policy and it would pay nothing if Lunsford prevailed at trial. HP presented no facts however, to support its contention that Westfield prevented it from settling the case. Moreover, the Westfield policy specifically states that Westfield "has no right or duty to settle" a claim resulting from an intentional act; thus, there was nothing that prevented HP from settling Lunsford's intentional tort claim. Although Westfield would not fund a settlement of Lunsford's claim, there is no evidence that Westfield deprived HP of an opportunity to settle the case.
*151 {¶ 22} HP next contends that the trial court erred in granting summary judgment because R.C. 2745.01 does not apply to its breach of contract claim against Westfield. R.C. 2745.01(D) provides that R.C. 2745.01
does not apply to claims arising during the course of employment involving discrimination, civil rights, retaliation, harassment in violation of Chapter 4112. of the Revised Code, intention infliction of emotion distress not compensable under Chapters 4121. and 4123. of the Revised Code, contract, promissory estoppel, or defamation.
HP contends that its claim is an insurance dispute involving a contract that arose during the course of Lunsford's employment and, therefore, R.C. 2745.01 does not apply to its breach of contract claim. HP's argument is without merit.
{¶ 23} In Stetter v. R.J. Corman Derailment Servs., L.L.C. , 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, the Supreme Court of Ohio considered the constitutionality of R.C. 2745.01. Among other issues, the Supreme Court considered whether the statute gives employees who are injured on the job an adequate remedy. Citing R.C. 2745.01(A) and (B), the court noted that " R.C. 2745.01 allows employees to recover for an intentional tort for injuries that result from a deliberate intent to injure." Id. at ¶ 57. Citing R.C. 2745.01(C), the court stated that R.C. 2745.01 also "allows recovery for an intentional tort for situations involving the deliberate removal of an equipment safety guard * * *." And then, with reference to R.C. 2745.01(D), the court noted that "[t]he claims listed in R.C. 2745.01(D), such as discrimination, sexual harassment, and retaliation, are unaffected by this enactment." Accordingly, the Supreme Court found that "the statute provides for meaningful remedies." Id. at ¶ 55.
{¶ 24} The Ohio Supreme Court's reference in Stetter to "the claims listed in R.C. 2745.01(D)" clearly means claims brought by an employee against his or her employer. Contrary to HP's argument, R.C. 2745.01(D) does not encompass an employer's breach of contract claim against its insurer.
{¶ 25} The Westfield policy at issue provides the coverage that is permitted in Ohio for a claim of employer intentional tort. It provides an insured who has been accused of an intentional tort against an employee with the ability to defend against the claim. If the insured is determined to have committed such an act with a deliberate intent to injure the employee, however, there is no duty on the part of the insurer to pay damages. Westfield fully performed its duty under the policy to defend HP in the Lunsford matter. Because the jury found HP liable for an intentional tort, and there is no duty under the policy to pay damages for bodily injury intentionally caused by HP, Westfield had no duty to indemnify HP for the damages it incurred in the Lunsford lawsuit, and Westfield did not breach the insurance contract.[1] Accordingly, the trial court properly granted summary judgment to Westfield.
{¶ 26} The first assignment of error is overruled.
III. IPA's Motion for Summary Judgment
{¶ 27} In its second assignment of error, HP contends that the trial court erred in granting summary judgment to IPA on HP's professional negligence claim. We disagree.
*152 {¶ 28} By HP's own admission at paragraph 37 of its complaint, in purchasing insurance from IPA, "HP reasonably expected to be provided coverage for all potential employer liability except in circumstances in which Ohio's workers' compensation laws apply or evidence which would support the conclusion that HP actually intended to cause injury." (Emphasis sic.)
{¶ 29} An insurance agent like IPA has a duty to exercise good faith and reasonable diligence in obtaining insurance requested by a customer. Lawson v. Ohio Cas. Ins. Co. , 8th Dist. Cuyahoga No. 65336, 1994 WL 245846, at *3 (June 2, 1994). Here, by its own admission, HP did not seek coverage for circumstances in which it actually intended to cause injury to an employee. Because a jury determined that HP intentionally injured Lunsford, and HP did not request a policy that would have covered the intentional injury, IPA did not breach its duty to HP in its procurement of coverage.
{¶ 30} The only way HP could prevail on its claim against IPA is by showing that it requested coverage for all employee claims, and that it did not act intentionally in injuring Lunsford. The doctrine of collateral estoppel, however, precludes this argument. Issue preclusion, also known as collateral estoppel, holds that a fact or a point that was actually and directly at issue in a previous action, and was passed upon and determined by a court of competent jurisdiction, may not be drawn into question in a subsequent action, whether the cause of action in the two actions be identical or different. Norwood v. McDonald , 142 Ohio St. 299, 52 N.E.2d 67 (1943). Under the collateral estoppel doctrine, even where the cause of action is different in a subsequent suit, a judgment in a prior suit may nevertheless affect the outcome of the second suit. Whitehead v. Gen. Tel. Co. , 20 Ohio St.2d 108, 112, 254 N.E.2d 10 (1969). Furthermore, mutuality of parties is no longer required for the defensive application of collateral estoppel when a party against whom the doctrine is asserted previously had his day in court and was permitted to fully litigate the issue sought to be raised in the later action. Agic v. Natl. Union Fire Ins. Co. , 8th Dist. Cuyahoga No. 100679, 2014-Ohio-4205, 2014 WL 4748436, ¶ 19.
{¶ 31} The jury in the Lunsford litigation specifically found that HP intended to cause injury to its employee. As a defendant in the underlying litigation, HP had its day in court regarding this issue and was permitted to fully litigate the issue. Accordingly, HP cannot now relitigate its intent to injure Lunsford in order to sustain its professional negligence claim against IPA. And despite HP's argument otherwise, it is not relevant that the issue of professional negligence was not decided in the underlying litigation. HP is bound by the jury's determination that it intended to injure Lunsford. Because HP did not seek coverage from IPA for employer liability where the employer intended to cause injury, HP's professional negligence claim against IPA fails as a matter of law.
{¶ 32} HP asserts that IPA was negligent, however, and that the trial court therefore erred in granting its motion for summary judgment, because the coverage it procured for HP is illusory. We disagree.
{¶ 33} " '[W]hen some benefit to the insured is evident from the face of the endorsement, the endorsement is not an illusory contract.' " Irondale , 754 F.Supp.2d at 933, quoting State Auto Ins. Co. v. Golden , 125 Ohio App.3d 674, 678, 709 N.E.2d 529 (8th Dist. 1998). Here, the policy at issue required that Westfield provide a defense to HP until a determination *153 regarding HP's intent was made. It did not have the option to refuse to defend the claim. Accordingly, the policy is not illusory. The second assignment of error is therefore overruled.
{¶ 34} Judgment affirmed.
MELODY J. STEWART, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR

Because we find that the policy at issue specifically excluded coverage for intentional torts, we need not address HP's argument that not all employment intentional torts are uninsurable. Resolution of that issue is unnecessary to our holding.