[Cite as *Yarbrough v. Erie Inspection Servs., Inc.*, 2024-Ohio-1712.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

Gregory Yarbrough, et al.                    Court of Appeals No.  OT-23-022

    Appellant                             Trial Court No.  21 CV 280

Frankenmuth Insurance Co.

    Intervening Plaintiff-Appellee

v.

Erie Inspection Services, Inc.               **DECISION AND JUDGMENT**

    Appellant                             Decided:  May 3, 2024

* * * * *

Leslie O. Murray, John T. Murray, and
Alexandra D. Lavelle, for appellant - Yarbrough

Sameul M. Pipino, Dale D. Cook, and
Nolan E. Wiley, for appellee

Jeffrey M. Stopar, for appellants – Erie Inspection
Services, Inc., and Joshua Heath

* * * * *

**DUHART, J.**

{¶ 1} Appellants, Gregory Yarbrough and Stephanie Yarbrough and appellant Erie

Inspection Services, Inc. appeal from the judgment of the Ottawa County Court of

Common Pleas granting summary judgment against them in a declaratory judgment action that was filed by intervenor plaintiff Frankenmuth Mutual Ins. Co. For the reasons that follow, the trial court's judgment is affirmed.

**Statement of the Case**

{¶ 2} Appellants, Gregory Yarbrough and Stephanie Yarbrough filed an amended complaint against appellants Erie Inspection Service, Inc. ("Erie") and Joshua Heath regarding an injury that Stephanie Yarbrough suffered on October 1, 2020. On the day of the incident, Heath, an employee of Erie, was performing an inspection on a home that was the subject of a pending sale. In order to perform the inspection, Heath removed floor paneling from the bathroom to reach the crawl space below. Stephanie Yarbrough, the real estate agent for the seller of the home, arrived at the property to tag personal property. The Yarbroughs allege that Heath failed to replace the floor paneling, resulting in Stephanie Yarbrough unexpectedly falling through the hole and suffering bodily injuries. In their action, the Yarbroughs brought claims for common law negligence and loss of consortium.

{¶ 3} Appellee, Frankenmuth Mutual Insurance Company ("Frankenmuth") filed a motion to intervene as the commercial liability insurance carrier for Erie. The court granted intervention, and Frankenmuth filed a complaint for declaratory judgment seeking a declaration that Frankenmuth had no duty to indemnify Erie for the Yarbroughs' claims. Frankenmuth filed a motion for summary judgment. The trial court granted the motion in favor of Frankenmuth, and against Erie and Heath, based on a

2.

professional services exclusion that was contained in the commercial liability insurance policy that was issued by Frankenmuth to Erie. Appellants timely appealed.

## Statement of the Facts

### A. Insurance Policy

{¶ 4} At all relevant times, Erie was insured by Frankenmuth under their Commercial Package Policy. The policy contains several professional services exclusions, which provide, in relevant part, as follows:

> EXCLUSION – DESIGNATED PROFESSIONAL
> SERVICES
>
> **This insurance does not apply to "bodily injury" … due to the rendering of … any professional service.** This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" … involved the rendering of … any professional service.
>
> …
>
> EXCLUSION – INSPECTION, APPRAISAL AND
> SURVEY COMPANIES
>
> **This insurance does not apply to "bodily injury" … for which the insured may be held liable because of the**

**rendering of … professional services in the performance of any … inspection … services.** This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by the insured, if the "occurrence" which caused the "bodily injury" … involved the rendering … [of] any professional services in the performance of any … inspection … services.

…

THE COMMERCIAL UMBRELLA

**This insurance does not apply to:**

…

**s. Professional Services**

**"Bodily injury" … due to rendering of or failure to render any professional services. This includes but is not limited to:**

…

**(3) Inspection * * * activities done by you … ;**

…

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision,

hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" … involved the rendering [of] … any professional service.

(Emphasis added.)

## B. The Incident

{¶ 5} According to deposition testimony by Joshua Heath, on October 1, 2022, Stephanie Yarbrough was present at the subject property as the seller's agent, and he was present to conduct an inspection. As part of the inspection procedure, Heath removed a floor panel in the bathroom to access the crawlspace where the main water shutoff was located and to look for leaks. He stated that this procedure was a standard part of a residential inspection practice. He further stated that after he removed the floor panel, he went across the hall to "run some more water," and within two minutes he heard a scream. He found that Ms. Yarbrough had fallen into the crawlspace through the hole left by the absent floor panel.

## Assignments of Error

{¶ 6} Appellants Gregory Yarbrough and Stephanie Yarbrough assert the following assignments of error:

> I. The trial court erred in ruling that as a matter of law that the liability insurance policy's exclusion of

5.

coverage for professional services excluded coverage

for leaving a crawl space access open and unattended.

II.     The court erred in ruling that the liability policy was

not illusory.

{¶ 7} Appellants Erie and Heath assert almost identical assignments of error:

I.      The trial court erred in holding that the liability

insurance policy's exclusion of coverage for

professional services excluded coverage for leaving a

crawl space open and unattended.

II.     The trial court erred in failing to rule on whether the

liability policy was illusory.

**Analysis**

{¶ 8} As appellants have filed virtually identical assignments of error, they will be addressed together in this analysis.

**Insurance Contract Interpretation**

{¶ 9} "We review as a matter of law the interpretation of an insurance policy." *Buehrer v. Meyers*, 2020-Ohio-3207, ¶ 13 (6th Dist.), citing *Sauer v. Crews*, 2014-Ohio-3655, ¶ 10. And "[w]e apply a de novo standard of review to a question of law." *Id.*, citing *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.,* 2002-Ohio-2842, ¶ 4.

6.

**{¶ 10}** "It is well settled that 'insurance policies should be enforced in accordance with their terms as are other written contracts. Where the provisions of the policy are clear and unambiguous, courts cannot enlarge the contract by implication so as to embrace an object distinct from that originally contemplated by the parties.'" *Id.* at ¶ 8, quoting *Rhodes v. Equitable Life Assur. Soc. of U.S.,* 54 Ohio St.2d 45, 47, (1978). "As we examine the contract as a whole, we presume that the parties' intent is reflected in the language used. When the policy language is clear, the court may look no further to find the intent of the parties." *Houston v. Liberty Mut. Fire Ins. Co.*, 2005-Ohio-4177, ¶ 36.

**{¶ 11}** "As a matter of law, a contract is unambiguous if it can be given a definite legal meaning." *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11. "If a reasonable interpretation of the language exists, then we should give the agreement its intended legal effect." *Laboy v. Grange Indemn. Ins. Co.*, 2015-Ohio-3308, ¶ 10.

**{¶ 12}** "'[A]n exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded.'" (Emphasis sic.) *Sauer* at ¶ 11, quoting *Hybud Equip. Corp. v. Sphere Drake Ins. Co.*, 64 Ohio St.3d 657, 665 (1992). "Courts are commanded to refrain from inserting or deleting words to a contract while also giving effect to the words used, which we cannot pretend do not exist or have no meaning." *Buehrer* at ¶ 16, citing *Cleveland Elec. Illum. Co. v. City of Cleveland*, 37 Ohio St.3d 50 (1988).

7.

## First Assignment of Error

## Inspection Services as Professional Services

{¶ 13} Appellants initially argue: (1) that the policy does not adequately define the term "professional services;" and (2) that under appellants' proposed definition, the term "inspection services" does not meet the definition of a professional service such that the professional services exception should apply in this case.

{¶ 14} Here, the policy expressly excludes coverage for bodily injury "due to the rendering of," "because of the rendering of," or "involved in the rendering of" "inspection services" or "inspection activities." It is undisputed that the hazard that allegedly gave rise to the accident in this case, namely, the removal of the flooring over the crawl space, was created while Joshua Heath was conducting a home inspection service.

{¶ 15} As the words of the policy clearly, unambiguously, and repeatedly provide that inspection services are included in the meaning of "professional services," we need not, and in fact may not, look any further to find the intent of the parties. Appellants, in offering alternative definitions of professional services, misplace their reliance on caselaw involving insurance contracts in which the term "professional services" is left undefined. *See Burlington Ins. Co. v. PMI America, Inc.*, 862 F.Supp.2d 719, 741 (S.D. Ohio 2012) ("[B]ecause "professional services" is not defined, Ohio law requires that the term to be narrowly construed [sic], so as to preserve coverage for [the insured].").

8.

**Failure to Replace Flooring**

{¶ 16} Appellant's next argue that, even if "professional services" are construed to include inspection services, the activity that gave rise to the liability in this case -- to wit, Heath's removal and subsequent failure to replace a removable piece of flooring during an inspection -- involves the "nonperformance of a routine, manual, and physical process," and, thus, the professional services exception should not apply. Even if the specific underlying allegation implicates a task that does not, in and of itself, involve a specialized skill, we find that Heath's removal of the flooring in order to access the crawlspace was an integral and necessary part of the inspection and, therefore, was part of the inspection service provided. *See Orchard, Hiltz & McCliment, Inc. v. Phoenix Ins. Co.*, 676 Fed. Appx. 515 (6th Cir.2017) (coverage excluded under professional services exclusion, even where some factual allegations arguably implicated non-professional services, because the allegations were reasonably related to the overall provision of professional services).

{¶ 17} Because the exclusionary language relied upon by appellee as well as by the trial court was correctly held to preclude coverage in this case, appellants' first assignments of error are found not well-taken.

**Second Assignment of Error**

**Illusory Coverage**

{¶ 18} Appellants allege in their second assignments of error that the lower court's -- and now our -- interpretation of the coverage offered by the Frankenmuth's

commercial general liability policy renders the policy illusory. "In general, an insurance contract is not illusory unless it fails to confer 'some benefit to the insured.'" *Pierson v. White Pine Ins. Co.*, 2022-Ohio-2702, ¶ 61 (4th Dist.), quoting *Ward v. United Foundries, Inc.*, 2011-Ohio-3176, ¶ 24. We note that the trial court did not make an express finding as to whether enforcing the exclusion under review rendered the coverage illusory and, therefore, unenforceable. However, we find that the trial court's conclusion that the exclusion was indeed enforceable implicitly denied appellants' argument regarding the illusory nature of that exclusion. An illusory contract, by definition, is unenforceable. *Hartman v. Erie Insurance Co.*, 2017-Ohio-668, ¶ 51, citing *State v. Stanley*, 2002-Ohio-4372 (7th Dist.) (holding that an illusory contract is not enforceable). The trial court's conclusion that the professional services exclusion was enforceable here, then, shows that it did not find the exclusion to be illusory as that finding would have precluded its enforcement. Further, we note that appellants do not cite any authority suggesting that the trial court was obligated to make an express finding.

{¶ 19} Notwithstanding appellants' suggestion that the trial court was obligated to make an express finding, the parties' briefs focus on the merits of whether enforcement of the exclusion rendered the coverage illusory. In summary judgment proceedings, once the moving party has satisfied its burden to show that there are not genuine issues of material fact precluding judgment, the responding party must satisfy its reciprocal burden to show that a genuine issue of material fact indeed exists. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The sole factual determination before the court on appellants' illusory

10.

coverage argument is whether the policy otherwise confers some benefit to the insured. *Pierson* at ¶ 61. Appellants fail to satisfy their burden. Specifically, Mr. and Mrs. Yarbrough's brief explicitly identifies at least one other instance in which the policy provided coverage to Erie, as described by the unrefuted deposition testimony of Erie's representative, Todd Radloff.[1] For that reason, appellants cannot show that there is a genuine issue of material fact regarding whether the policy confers some benefit when the exclusion is enforced in this instance.

{¶ 20} In sum, because appellants actually showed that coverage could still exist for liability incurred during an inspection, and because a plain reading of the policy shows that coverage could still be triggered where Erie employees are exposed to liability for bodily injury caused by their ordinary negligence in performing some task that falls *outside* the provision of professional services, appellants have failed to identify a genuine issue of material fact regarding whether enforcement of the exclusion renders the policy illusory. Accordingly, appellants' second assignment of error is found not well-taken.

---

[1] Mr. Radloff's deposition was not included in the record before this court. However, each party cited his testimony without clarification or suggestion that the other party misrepresented his testimony.

## Conclusion

{¶ 21} The judgment of the Ottawa County Court of Common Pleas is affirmed.

Appellants are to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Gene A. Zmuda, J.

_____

Myron C. Duhart, J.
CONCUR.

JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.